NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0170n.06

No. 17-3650

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Apr 02, 2018 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| RODOLFO TREJO, | ) | COURT FOR THE |
| | ) | NORTHERN DISTRICT OF |
| Defendant-Appellant. | ) | OHIO |
| | ) | |
| | ) | |

Before: BOGGS, CLAY, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Rodolfo Trejo was convicted of three counts of distributing cocaine, one count of possessing with the intent to distribute cocaine, and one count of illegally reentering the United States after having been deported. He was sentenced to 60 months' imprisonment. Trejo's appeal raises several objections to the reasonableness of his sentence. Because we find that the sentence was both procedurally and substantively reasonable, we affirm.

I.

Rodolfo Trejo was born in Reynosa, Mexico. He came to the United States in 1999 on a three-month vocational visa but remained after his visa expired. He purchased the birth certificate and Social Security card of Flavio Garcia, a living U.S. citizen who was the victim of

identity theft, and used those documents to obtain an Ohio identification card and to secure work. In August 2011, Trejo, in his own name, became a naturalized citizen of the United States.

In February 2012, Trejo was convicted of identity theft in Ohio state court. The state court sentenced him to one month of inactive community control and a fine of $117. Eight months later, he was convicted in federal court of naturalization fraud, 18 U.S.C. § 1425(a), for making a materially false statement regarding the identity theft crime on his application for naturalization. The district court sentenced him to three years' probation, revoked his naturalization, and ordered him to cooperate with immigration proceedings. He was deported to Mexico in July 2013. Approximately six months later, Trejo illegally reentered the United States.

On three occasions in the fall of 2016, Trejo sold cocaine to a confidential informant in or near Canton, Ohio. Twice Trejo met the confidential informant through a middle man to whom Trejo supplied drugs. In November 2016, the Bureau of Alcohol, Tobacco, Firearms and Explosives informed Immigration and Customs Enforcement that Trejo was involved in selling and distributing firearms and narcotics with a criminal organization operating in the area. In December 2016, Trejo was stopped for a traffic violation, during which a search of his car and his person revealed several bags of cocaine.

Trejo was indicted on three counts of distributing cocaine, in violation of 21 U.S.C. § 841; one count of possessing with the intent to distribute cocaine, in violation of 21 U.S.C. § 841; and one count of illegally reentering the United States after having been deported, in violation of 8 U.S.C. § 1326. Trejo pleaded guilty to all five counts without a plea agreement.

At sentencing, the district court adopted the Presentence Investigation Report's (PSIR) conclusion that Trejo's total Guidelines offense level was 15 and that his criminal history score

was 4, which placed him in criminal history category III and resulted in a suggested Guidelines range of 24 to 30 months' imprisonment.[1] The district court, however, decided to vary upward from the Guidelines range and sentenced Trejo to 60 months' imprisonment, followed by 10 years of supervised release.

The district court noted several bases for its upward variance. First, in considering the offense conduct, the district court noted that Trejo not only had sold drugs, but appeared to have supplied them as well. In addition, the district court found that Trejo was involved in a "criminal organization" engaged "in the illegal sale and distribution of firearms and narcotics"—"some of the most challenging activity" because "it creates enormous amounts of harm in our communities." In considering his criminal history, the district court said that Trejo had been punished only "nominal[ly]" for his prior offenses. For the state identity theft conviction, he had been sentenced to one month of inactive community control and ordered to pay costs of $117; he had not been made to pay restitution either to the victim or the government. The federal court had placed him on three years of probation for his conviction for naturalization fraud. The district court believed Trejo had taken advantage of those "lenient" sentences by returning to the United States soon after he was deported. And shortly after his illegal reentry, Trejo had committed the even more dangerous crimes listed above. So, while the district court acknowledged that Trejo did not have a history of violence, it decided that a long sentence was needed to deter him and others who might commit these kinds of crimes, to ensure that Trejo would stop offending and could be rehabilitated, to protect the public, and to reflect the seriousness of the crimes committed.

---

[1] The statutory maximum term of imprisonment was 20 years for the drug offenses, 21 U.S.C. § 841(b)(1)(C), and 10 years for the illegal reentry offense, 8 U.S.C. § 1326(b)(1).

Trejo argued to the district court that it was impermissibly double counting his offense conduct by varying upward based on conduct already considered in calculating his Guidelines range. The district court rejected that argument, stating that "[t]he court is permitted to consider all of the nature and circumstances of the defendant's conduct." Trejo also argued that an upward variance would create an unwarranted sentencing disparity. He noted that the average sentence for a defendant convicted of illegal reentry had decreased over the last five years from 19 months to 14 months[2] and argued that sentencing statistics suggested that any upward variance for an illegal reentry offense would create a disparity. He argued that upward variances in general, which occurred in only 2.2% of cases in the Sixth Circuit in 2016,[3] should be reserved for the most serious offenses. The district court concluded that the statistics Trejo cited did not account for "the individual circumstances of this case and of this defendant" because his reentry conviction did not occur in a "vacuum" but followed soon after his deportation for naturalization fraud and led to his supplying drugs as part of a gang.

On appeal, Trejo raises three objections to his sentence: (1) the district court impermissibly double counted his offense conduct at sentencing, (2) the totality of the circumstances did not justify an upward variance in this case, and (3) his sentence creates an unwarranted disparity among defendants with similar records and similar convictions.

II.

---

[2] *See* U.S. Sentencing Comm'n, *Quick Facts: Illegal Reentry Offenses* 2 (Mar. 2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Quick-Facts_Illegal-Reentry_FY14.pdf.

[3] *See* U.S. Sentencing Comm'n, *2016 Sourcebook of Federal Sentencing Statistics, Table N-6: Comparison of Sentence Imposed and Position Relative to the Guideline Range by Circuit*, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2016/TableN-6.pdf.

We review a criminal sentence for reasonableness under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41, 52 (2007). A sentence must be both procedurally and substantively reasonable. *United States v. Morgan*, 687 F.3d 688, 693 (6th Cir. 2012). Procedural reasonableness requires that the district court not have committed errors such as "improperly calculating[] the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51. Under this standard, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Wright*, 747 F.3d 399, 413 (6th Cir. 2014). "A sentence is substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Camiscione*, 591 F.3d 823, 832 (6th Cir. 2010) (citation omitted). "In reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may . . . take the degree of variance into account and consider the extent of a deviation from the Guidelines." *Gall*, 552 U.S. at 47. But "[t]he fact that [we] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.* at 51.

A.

Trejo first argues that the district court impermissibly double counted his offense conduct by basing its decision to vary upwards from the applicable Guidelines range on conduct that was used to calculate the range. Specifically, Trejo argues that the district court could not consider either the fact that he had been involved in drug trafficking as part of a criminal organization or the fact that he had illegally reentered the United States while he was on probation in deciding

whether to vary upward because the Guidelines "already punished" him for that conduct. He claims the former had been used to determine his offense level, and the latter was used to increase his criminal history score pursuant to U.S.S.G. § 4A1.1(d).

This argument fails. This Court has consistently held that a district court neither commits procedural error, nor pronounces a substantively unreasonable sentence, simply because, in evaluating the 18 U.S.C. § 3553(a) factors, it considers, as one component of its decision to vary upward from the Guidelines, conduct that also factored into calculating the Guidelines range. *See United States v. Lanning*, 633 F.3d 469, 477–79 (6th Cir. 2011); *United States v. Tristan-Madrigal*, 601 F.3d 629, 636 n.1 (6th Cir. 2010); *see also United States v. Annese*, 656 F. App'x 761, 764–65 (6th Cir. 2016); *United States v. Brown*, 593 F. App'x 444, 446 (6th Cir. 2014); *United States v. Sanbria-Bueno*, 549 F. App'x 434, 441–42 (6th Cir. 2013). Therefore, the district court did not impermissibly double count Trejo's offense conduct by considering his illegal reentry into the United States while on probation and his drug trafficking as part of its determination of an appropriate sentence under § 3553(a).

B.

Next, Trejo argues that his sentence is substantively unreasonable because the totality of the circumstances did not warrant an upward variance from the recommended range of 24 to 30 months to a 60-month sentence. In support of that argument, Trejo notes that he illegally reentered the United States to be with his family, that this was his first conviction for a drug offense, and that he had not been indicted for conduct involving guns.

While the district court imposed a sentence that was two and a half years above the top of the recommended Guidelines range, we cannot say that it abused its discretion. The district court acknowledged the PSIR's suggestion that a downward departure might be warranted "[i]f the

court determine[d] that the defendant's criminal history category substantially over-represents the seriousness of his criminal history o[r] the likelihood that he will commit other crimes," but found no basis to support such a determination.[4] The district court understood that this was the first time Trejo had been convicted for an offense involving drugs and considered the effect of the sentence on his family, but based its decision to vary upward on several factors that it believed were not adequately addressed by the Guidelines. Trejo had previous convictions in state and federal court, for which the Guidelines accounted; yet the punishments for those crimes were, in the court's view, lenient[5] and had not deterred Trejo from committing the crimes at issue in this case. In addition, Trejo not only began committing these crimes while he was on probation, for which the Guidelines accounted; but also began committing these more dangerous crimes only six months after his deportation for his prior federal conviction. The district court also found that Trejo was "more likely than not to commit additional crimes."

Finally, in addition to his drug convictions, the district court found, based on information in the PSIR, that Trejo had been illegally selling and distributing firearms and narcotics as part of a criminal organization, which it considered serious conduct that threatened the safety of the local community. The Guidelines did not account for this aspect of his conduct. The district court explicitly considered the § 3553(a) factors; concerns regarding deterrence, rehabilitation, the seriousness of his crimes and conduct, and community safety led the court to vary upward.

We must give "due deference" to the district court's decision because it was in a much better position to evaluate the defendant and the specific circumstances of his case. *Gall*, 552

---

[4] Trejo noted the PSIR's suggestion in his brief, but he did little else to develop the argument.

[5] Again, Trejo received just a month of inactive community control and a $117 fine for his state court identity theft conviction. And the federal court placed him on three years' probation after his conviction for naturalization fraud.

U.S. at 51–52. Because the district court justified its upward variance with reference to the § 3553(a) factors and provided a sufficient explanation for the sentence imposed, we cannot find that the district court abused its discretion in deciding that 60 months' imprisonment was justified in this case.

C.

Finally, Trejo argues that the sentence imposed creates an unwarranted disparity between him and other similarly situated defendants, in violation of 18 U.S.C. § 3553(a)(6). An unwarranted disparity is, of course, just one of the factors a court must consider when fashioning an appropriate sentence. The district court, here, considered Trejo's disparity argument based on the statistics offered to it. Ultimately, however, the court decided that the statistics lacked sufficient detail and context to show that the defendants whose sentences were reflected by the statistics "ha[d] been found guilty of similar conduct." § 3553(a)(6). We have said that a sufficient level of fit is required between the cited statistics and the case at hand. *See United States v. Mullet*, 822 F.3d 842, 854 (6th Cir. 2016) ("[G]eneral statistics that cover a multitude of other crimes committed in a multitude of other ways do not create an 'unwarranted' disparity."). Trejo focused on his illegal reentry offense, but, because Trejo illegally reentered the United States so soon after being deported for a different crime and also committed drug crimes as part of a gang upon his return, the district court found the statistics Trejo cited insufficiently comparable to his particular case. Trejo has not shown that the district court abused its discretion in so concluding.

\* \* \*

In the end, the district court found that Trejo's crimes were serious and dangerous to his community, especially taken together. And based on the conduct in this case and his criminal

history, the district court found that Trejo needed to be sufficiently punished to deter him from continuing to commit crimes. To the extent Trejo argues that the district court should have weighed the factors differently, his argument fails. *See United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008).

Because the district court did not abuse its discretion in sentencing Trejo to 60 months' imprisonment, we AFFIRM its judgment.